**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

---

| | | |
|---|---|---|
| STUDENT DOE, suing under fictitious | : | |
| name for privacy reasons, by and through | : | |
| STUDENT DOE's parents, MOTHER DOE | : | Civil Action No. 24-1127 |
| and FATHER DOE, suing under fictitious | : | |
| names to protect the identity and privacy of | : | |
| STUDENT DOE, their child; and MOTHER | : | |
| DOE and FATHER DOE, individually and | : | |
| on their own behalf | : | |
| | : | |
| vs. | : | |
| | : | |
| ABINGTON FRIENDS SCHOOL, | : | |
| RICHARD NOURIE, DOMINIQUE M. | : | |
| GERARD, LATOYA MILLER AND | : | |
| KEVIN RYAN | : | |

---

## <u>ORDER</u>

AND NOW, this _____ day of _____, 2024,

upon consideration of Defendants' Motion to Dismiss Plaintiffs' Complaint (ECF Doc. No. 1), and

any response thereto, it is hereby **ORDERED** and **DECREED** that Defendants' Motion to Dismiss

is **GRANTED**.  It is **ORDERED** and **DECREED** that Plaintiffs' Complaint (ECF Doc. No. 1)

against Defendants is hereby **DISMISSED WITH PREJUDICE**.

BY THE COURT:

_____

J.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| STUDENT DOE, suing under fictitious | : | |
| name for privacy reasons, by and through | : | |
| STUDENT DOE's parents, MOTHER DOE | : | Civil Action No. 24-1127 |
| and FATHER DOE, suing under fictitious | : | |
| names to protect the identity and privacy of | : | |
| STUDENT DOE, their child; and MOTHER | : | |
| DOE and FATHER DOE, individually and | : | |
| on their own behalf | : | |
| | : | |
| vs. | : | |
| | : | |
| ABINGTON FRIENDS SCHOOL, | : | |
| RICHARD NOURIE, DOMINIQUE M. | : | |
| GERARD, LATOYA MILLER AND | : | |
| KEVIN RYAN | : | |

---

**DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' COMPLAINT**

Defendants, by and through their counsel, Marshall Dennehey, P.C., respectfully move to dismiss Plaintiffs' Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).  In support thereof, Defendants submit the attached Memorandum of Law.

Respectfully submitted,

**MARSHALL DENNEHEY, P.C.**

BY: _____

LEE C. DURIVAGE
Identification Number: 205928
2000 Market Street, Suite 2300
Philadelphia, PA  19103
Phone: (215) 575-2584
Fax: (215) 575-0856

Attorney for Defendants

Dated: April 10, 2024

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

---

| | |
|---|---|
| STUDENT DOE, suing under fictitious name for privacy reasons, by and through STUDENT DOE's parents, MOTHER DOE and FATHER DOE, suing under fictitious names to protect the identity and privacy of STUDENT DOE, their child; and MOTHER DOE and FATHER DOE, individually and on their own behalf<br><br>vs.<br><br>ABINGTON FRIENDS SCHOOL, RICHARD NOURIE, DOMINIQUE M. GERARD, LATOYA MILLER AND KEVIN RYAN | Civil Action No. 24-1127 |

---

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' COMPLAINT

### I.   FACTUAL BACKGROUND AND PROCEDURAL HISTORY

On March 14, 2024, Plaintiffs filed the instant lawsuit against Abington Friends School ("AFS"), alleging "breach of contract, discrimination in violation of Title IX, 20 U.S.C. § 1681 *et seq*, and discrimination in violation of Section 504 of the Rehabilitation Act of 1973, as amended, 29 U.S.C. § 794," arising from purported peer harassment and abuse experienced by Student Doe while attending AFS for the 2018-2019 and 2019-2020 school years. *See* Plaintiff's Complaint (ECF Doc. No. 1), at ¶ 7. Plaintiffs also assert a claim of negligent infliction of emotional distress against individual Defendants Richard Nourie, Dominique M. Gerard, Latoya Miller, and Kevin Ryan. *Id*.

Initially, Plaintiffs assert that Student Doe was a student at AFS during the 2018-2019 and 2019-2020 school years. Pl. Compl., at ¶ 29. They further assert that, during that time, "Student Doe was the victim of pervasive abuse, bullying, harassment, assault, battery, false imprisonment,

verbal abuse regarding physical characteristics, and discrimination on the basis of sexual orientation" at the hands of Student Doe's ex-boyfriend ("Student Perpetrator") and other classmates. Pl. Compl., at ¶ 3. Specifically, Plaintiffs assert that, after Student Doe attempted to end the romantic relationship with Student Perpetrator in March of 2019, the latter launched a campaign of harassment and abuse toward her with the help of several other AFS students. Pl. Compl., at ¶¶ 76-80. This harassment and abuse by Student Perpetrator and others allegedly included, but was not limited to:

- spreading false sexual rumors about Student Doe;

- physically restraining Student Doe at school while Student Perpetrator and several students called Student Doe derogatory names such as "slut," "fat slut," and "whore;"

- slapping Student Doe with slices of cheese while other students recorded videos on their phones.

Pl. Compl., at ¶¶ 79-81.

Plaintiffs assert that, following one such incident on May 24, 2019, Student Doe reported the harassment to AFS's "Class Clerks." Pl. Compl., at ¶ 82. Plaintiffs do not allege that Student Doe reported the incident to any faculty or administration at that time. They do allege, however, that, in August of 2019, in the lead up to the 2019-2020 school year, Mother and Father Doe contacted AFS Head of School Richard Nourie and requested a meeting to discuss the alleged harassment. Pl. Compl., at ¶ 86. Plaintiffs claim that, at the meeting, which was held on September 10, 2019, Mother and Father Doe informed Mr. Nourie of the various ways in which they believed Student Doe was previously abused by Student Perpetrator. Pl. Compl., at ¶ 89. Plaintiffs claim that, at that time, Mr. Nourie assured them that AFS would notify the appropriate people, monitor the situation, and coordinate with AFS faculty and staff to ensure Student Doe's safety. Pl. Compl., at ¶¶ 89-90.

Plaintiffs next allege that on the evening of October 31, 2019, Student Perpetrator and several classmates, went to Student Doe's house looking for Student Doe, with the alleged intention of physically harming her. Plaintiffs do not assert that they relayed this incident to AFS at that time or that even Student Doe was aware of it. Pl. Compl., at ¶¶ 95-99.

Plaintiffs assert that on December 20, 2019 (the last day before winter break), Student Perpetrator "again sought to falsely imprison, assault, bully and harass Student Doe." Pl. Compl., at ¶ 103. Plaintiffs that Father Doe contacted Mr. Nourie that day about "another significant and unacceptable issue that took place today at school" and requested to address the issue with Mr. Nourie. Pl. Compl., at ¶ 104.  Plaintiffs then aver that then-Upper School Director Dom Gerard then organized a meeting with Student Doe to gather additional details regarding the specifics of the alleged harassment and abuse. Pl. Compl., at ¶ 111. Plaintiffs allege that, in this meeting, Student Doe described in detail the harassment and abuse by Student Perpetrator, and also disclosed that she identified as lesbian. Pl. Compl., at ¶¶ 117-119. Plaintiffs assert that, following this meeting, Mother and Father Doe met with Mr. Gerard, Upper School Dean of Students LaToya Miller, and School Counselor Kevin Ryan to review what AFS had learned during its meeting with Student Doe. Pl. Compl., at ¶¶ 121-122. There, Plaintiffs assert that the parties agreed that AFS would address the issues with Student Perpetrator immediately after exams had concluded, including by involving Student Perpetrator's parents. Pl. Compl., at ¶ 127.

Plaintiffs broadly allege that, from that point on, AFS failed to follow through on this promise and largely paid "lip service" to Plaintiffs while failing to properly investigate and take necessary disciplinary measures to ensure Student Doe's safety. Pl. Compl., at ¶ 4. For example, Plaintiffs assert that Dom Gerard took Student Perpetrator at his word that he had no ill intentions when he visited Plaintiffs' home on October 31, 2019, despite warnings that Student Perpetrator

had a history of manipulation and deception. Pl. Compl., at ¶ 189. Plaintiffs also assert that Mr.
Gerard stated that Student Perpetrator had "only slapped Student Doe in the face with slices of
pieces of cheese," and largely dismissed Student Doe's contention that it was not consensual and
that Student Perpetrator had restrained Student Doe for it and had encouraged others to take videos.
Pl. Compl., at ¶ 190. Plaintiffs also claim that, once Student Doe began to post on social media
about these incidents, AFS began to target and blame her for creating additional social drama and
engaging in harassment of her own. Pl. Compl., at ¶ 194. Finally, Plaintiffs generally allege that
AFS's actions in responding to the purported harassment contravened the mandates of the school's
Community Handbook, which set forth certain investigative and disciplinary procedures for
offenses deemed "major." *See* generally Pl. Compl., at ¶¶ 236-260. Plaintiffs contend that AFS's
Community Handbook is incorporated into the contract for Student Doe's enrollment at AFS, and
so consequently, AFS is liable to Plaintiffs for, *inter alia*, breach of the enrollment contracts for
the 2018-2019, 2019-2020, and 2020-2021 school years. Pl. Compl., at ¶¶ 266-283.

Ultimately, Plaintiffs summarily allege that "due to the repeated peer harassment and
bullying experienced by Student Doe and the deliberate indifference from AFS administrators and
staff, threat of summary dismissal, refusal to discipline the perpetrators and, refusal to comply with
the terms of the AFS Handbook . . . Plaintiffs were left with no choice but to withdraw Student
Doe from AFS in September 2020. Pl. Compl., at ¶ 238. While Plaintiffs now bring various
contractual, tort, and statutory claims against AFS, it is evident that Plaintiffs' claims are deficient
as a matter of law and must be dismissed with prejudice.

## II.   LEGAL STANDARD

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for the dismissal of a
complaint for failure to state a claim upon which relief may be granted. *Fed. R. Civ. P. 12(b)(6)*.

The purpose of a 12(b)(6) motion is to test the legal sufficiency of the complaint and to "streamline litigation by dispensing with needless discovery and fact finding." *Neitzke v. Williams*, *490 U.S. 319, 326-27 (1989)*. Therefore, when it appears from the face of the pleading that a plaintiff can prove no set of facts that would entitle him to relief, the court must dismiss plaintiff's claims. *See* *Hishon v. King & Spalding*, *467 U.S. 69, 73 (1984).*  Further, a complaint may be dismissed "if it does not allege 'enough facts to state a claim to relief that is plausible on its face.'" *See* *Odom v. Erie Ins. Exchange*, *2008 WL 5188828,  *1 (W.D. Pa. 2008)*; *see also* *Bell Atlantic Corp. v. Twombly*, *550 U.S. 544 (2007)*; *Ashcroft v. Iqbal*, *556 U.S. 662, 684 (2009)* (stating that the decision in *Twombly* "expound[s] the pleading standard for 'all civil actions'). Indeed, the United States Supreme Court has unequivocally determined that the pleading standard under Federal Rule of Civil Procedure 8 demands more than an "unadorned, the defendant-unlawfully-harmed-me accusation." *Iqbal*, *556 U.S. at 678*. Moreover, a pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Id.* Nor does a complaint suffice if it tenders "'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.*, *citing* *Twombly*, *at 557*; *see also* *Evancho v. Fisher*, *423 F.3d 347, 351 (3d. Cir. 2005)* (stating that "a court need not credit either 'bald assertions' or 'legal conclusions' in a complaint when deciding a motion to dismiss"). Where, as here, Plaintiffs can prove no set of facts in support of their claims against Defendants, Plaintiffs' claims in the Complaint should be dismissed as a matter of law.

## III.   ARGUMENT

### A.   Mother Doe and Father Doe Lack Standing to Bring Suit on Behalf of Student Doe

The caption of Plaintiffs' Complaint identifies Student Doe and indicates that Student Doe is "suing…by and through Student Doe's parents, Mother Doe and Father Doe."  Plaintiffs' Complaint further states that "Student Doe is not now a minor but has not reached the age of 20 as

5

of the filing of this complaint." Pl. Compl., at ¶ 8.   Of course, courts routinely dismiss representative claims by parents (on behalf of their children) once the individual reaches the age of majority. ***Anderson v. Abington Heights School Dist.***, *2017 WL 6327572, at \*1 n.1 (M.D. Pa. 2017)* (noting that minor "reached the age of majority" during the pendency of the lawsuit and "[parent] no longer has standing in this action"); *see also **Muth v. Carroll**, 1990 WL 92526, at \*7 (E.D. Pa. 1990)*; ***Li v. Revere Local School Dist.***, *2023 WL 3302062, \*14 n.14 (6th Cir. 2023)* (citing cases and noting that "generally, district courts choose to address a minor reaching the age of majority and dismiss guardians acting in a representative capacity"); ***Doe v. Univ. of the South***, *687 F.Supp. 2d 744, 158-59 (E.D. Tenn. 2009)* (dismissing Title IX claim, noting that "James Doe and Mary Doe 'as parent[s] lack standing to assert a Title IX claim' because John Doe 'has attained the age of majority'").   From this, to the extent Plaintiffs are attempting to pursue claims of Student Doe "by and through" Student Doe's parents, this should be rejected for lack of standing.

### B.      Mother Doe and Father Doe's Claims Are Time Barred

Each of the claims set forth in the Complaint suggest that they are being pursued by Mother Doe and Father Doe in their individual capacity.   It is well-established that the statute of limitations for pursuit of Title IX, Section 504 and negligence claims is two years, and that the statute of limitations for a breach of contract claim is four years. *See **Palmore v. Clarion Univ. of Pennsylvania**, 2023 WL 5607557, \*4 (3d. Cir. 2023)* (discussing statute of limitations for Title IX, negligence and breach of contract); ***P.P. ex rel. Michael P. v. West Chester Area School Dist.***, *585 F.3d 727, 736-737 (3d. Cir. 2009)* (holding that the IDEA's two-year statute of limitations applies to claims made for education under § 504 of the Rehabilitation Act).

Here, Mother Doe and Father Doe assert that AFS breached their contractual agreements with them during the 2018-2019 and 2019-2020 school year, largely premised on the alleged failure to timely investigate and/or discipline "Student Perpetrator" for alleged incidents occurring

6

prior to January 2020.  Mother Doe and Father Doe go to great lengths to assert that they voiced

their concerns over the alleged lack of response to their complaints in or about January of 2020—

more than four years prior to initiating this lawsuit.  Similarly, they assert the same type of

allegations in support of their other claims – each of which has a two year statute of limitations.

As Mother Doe and Father Doe failed to initiate a lawsuit within the relevant statute of limitations

for their claims, all claims asserted by Mother Doe and Father Doe must be dismissed as a matter

of law.

C.      **Plaintiffs' Title IX and Section 504 Claims Should be Dismissed Because AFS's Tax Exempt Status is Insufficient to Establish Receipt of Federal Funding for Purposes of Either Statute**

"Title IX seeks to ensure that "[n]o person in the United States shall, on the basis of sex,

be excluded from participation in, be denied the benefits of, or be subjected to discrimination under

any education program or activity receiving Federal financial assistance ...." **_Marfia v. Gettysburg_**

**_Area School Dist._**, *2023 WL 8359882, \*3 (M.D. Pa. 2023)*, *quoting 20 U.S.C. § 1681(a)*.

Similarly, Section 504 of the Rehabilitation Act states that "[n]o otherwise qualified individual

with a disability in the United States…shall, solely by reason of her or his disability, be excluded

from the participation in, be denied the benefits of, or be subjected to discrimination under any

program or activity receiving Federal financial assistance.... **_S.H. ex rel. Durell v. Lower Merion_**

**_School Dist._**, *729 F.3d 248, 260 (3d. Cir. 2013)*, *quoting 29 U.S.C. § 794(a)*.

Here, Plaintiffs' Complaint alleges that "AFS is exempt from federal income taxes under

Section 501(c)(3) of the Internal Revenue Code, which constitutes federal financial assistance for

the purposes of Title IX" and "AFS is exempt from federal income taxes under Section 501(c)(3)

of the Internal Revenue Code, which constitutes federal financial assistance." Pl. Comp., at ¶¶ 286;

302-303.  In support of this assertion, Plaintiffs cite to two cases – one from the Central District

of California (**_Herrera_**) and one from the District of Maryland (**_Buettner-Hartsoe_**).  Neither case

is persuasive, they are against the weight of authority throughout the country and, in the case of

***Buettner-Hartsoe***, it has been overturned by the Fourth Circuit Court of Appeals. *See **Buettner-***

***Hartsoe v. Baltimore Lutheran High School Ass'n***, *2024 WL 1289592, \*5 (4th Cir. Mar. 27,*

*2024)* (stating that "we hold that tax exempt status pursuant to 26 U.S.C. § 501(c)(3) does not

equate to 'receiving Federal financial assistance' for purposes of Title IX").

> The Fourth Circuit succinctly and correctly noted:
>
> Tax exemption is not "Federal financial assistance." This is not a novel concept.
> Indeed, since Title IX's inception over fifty years ago, it has never been applied to
> organizations based solely on their tax exempt status. And for good reason.
> Although tax exemption is a tax benefit, that does not mean it is "Federal financial
> assistance" for Title IX purposes. As noted above, "assistance" means "aid, help,
> or support," which all connote financial grants. Tax exemption, however, is the
> withholding of a tax burden, rather than the affirmative grant of funds. **Thus, tax
> exemption is not "Federal financial assistance."**

***Id.*** *at \*4* (emphasis added).  The opinion is, of course, consistent with the grand majority of cases

throughout the country that have analyzed this issue. ***Johnny's Icehouse, Inc. v. Amateur Hockey***

***Ass'n Illinois, Inc.***, *134 F.Supp. 2d 965 (N.D. Ill. 2001)* (stating that defendant's

"tax exempt status, without more, is also insufficient to subject it to the antidiscrimination

requirements of Title IX"); ***Doe by and through Doe v. Currey Ingram Academy***, *2024 WL*

*945932, \*5 (M.D. Tenn. Mar. 5, 2024)* (emphasis added) (stating that "[i]t is clear that the alleged

fact (which the Court accepts as true, incidentally without any pushback by Defendant) that

Defendant has tax-exempt status **affirmatively fails to plausibly suggest the legal conclusions**

(which the Court does not accept as true) that Defendant has been extended Federal financial

assistance, that Defendant is a "recipient," and that Defendant is within the scope of Title IX so as

to be potentially liable thereunder"); ***Russo v. Diocese of Greenburg***, *2010 WL 3656579, \*3 (W.D.*

*Pa. 2010)* (stating that "we are inclined to express our doubt, without necessarily deciding, that

Russo could prove that either coordinating educational services with the public school district or

obtaining tax exempt status would transform a private, parochial school into a recipient of Federal Financial Assistance for purposes of Title IX and/or the Rehabilitation Act"); ***Martin v. Delaware Law School of Widener Univ.***, *625 F.Supp. 1288, 1302 n.13 (D. Del. 1985)* (stating that "[a]ssistance [under Section 504] connotes the transfer of government funds by way of subsidy, not merely exemption from taxation"); ***Bachman v. American Soc. Of Clinical Pathologists***, *577 F.Supp. 1257, 1264 (D. NJ 1983)* (stating that "the Rehabilitation Act was not intended to cover tax-exempt institutions absent any further affirmative federal financial assistance").  Quite simply, tax exemption is not "federal financial assistance" for purposes of Title IX and Section 504.  As Plaintiffs have failed to plausibly allege that AFS received "federal financial assistance," Count II and Count III of Plaintiffs' Complaint must be dismissed as a matter of law.

### D.      Plaintiffs' Breach of Contract Claims Should be Dismissed

A plaintiff alleging breach of contract must specifically plead "(1) the existence of a contract, including its essential terms; (2) a breach of a duty imposed by the contract; and (3) resultant damages." ***Reformed Church of the Ascension v. Hooven & Sons, Inc.***, *764 A.2d 1106, 1109 (Pa. Super. Ct. 2000)* citing ***Corestates Bank N.A. v. Cutillo***, *723 A.2d 1053, 1058 (Pa. Super. Ct. 1999)*; ***Schreiber v. Olan Mills***, *627 A.2d 806, 808 (Pa. 1993)* (identifying the elements for imposing contractual liability).

Moreover, courts throughout the country have often rejected breach of contract claims premised on an alleged violation of handbook/policies and procedures manuals. *See **Dobson v. Milton Hershey School**, 356 F.Supp. 3d 428, 435-36 (M.D. Pa. 2018)* (denying plaintiff's motion to amend complaint and assert a breach of contract claim where the plaintiff "reasserts breach [of contract] but provides no details beyond reciting the bare elements of a claim," noting that "[s]uch threadbare recitation of elements 'will not do'" under the Supreme Court's precedent set forth in Iqbal); ***Ryan***, *535 F. Supp. 3d at 369* (citing cases and noting that "school publications are

generally not a valid source of contractual obligations under these circumstances"); **_G. v. Faye_** **_School_**, *931 F.3d 1, 12-13 (1ˢᵗ Cir. 2019)* (upholding dismissal of breach of contract claim, finding that "aspirational diversity statements" set forth in student handbook "are exactly the sort of generalized, aspirational statements that are insufficiently definite to form a contract"); **_Posso v._** **_Niagara Univ_**., *2020 WL 8771334, \*10 (W.D.N.Y. 2020)* (citing cases and dismissing plaintiffs' breach of contract claims premised on alleged failure to follow anti-harassment policies and procedures in student handbook, noting that "[c]ourts have held that a university's general policy statements, rules, guidelines, and broad statements about fair and equal treatment cannot support a breach of contract claim").

In **_David_**, plaintiff sought to hold private university liable for breach of contract alleging, among other things, that the university failed to adhere to its anti-harassment policy contained in its handbook.  **_David v. Neumann Univ._**, *187 F.Supp. 3d 554, 559-560 (E.D. Pa. 2016)*.  In dismissing plaintiff's breach of contract claim, the court noted that "Plaintiff identifies no terms that are sufficiently definite" and that plaintiff's identification of university's "zero tolerance" anti-harassment and discrimination policies "merely declare[d] the University's aspirational approach to complaints involving illegal discrimination, harassment and/or retaliation." **_Id._** *at 560*, *citing* **_Nungesser v. Columbia Univ._**, *169 F.Supp. 3d 353, 370 (S.D.N.Y. 2016)*.  In so holding, the court noted "Plaintiff cites no Handbook provision, or any other University guideline, policy, or procedure, promising that a student would be completely insulated from language or conduct that personally offended her to some degree" and "Plaintiff has not shown how the University's general, aspirational policy created any sort of affirmative, enforceable duty on the part of the University." **_Id._**; *see also* **_Kim_**, *2021 WL 4243442 at \*4 (*granting motion to dismiss plaintiff's breach of contract claim "for failure 'to follow the student handbook and regulations'" in connection with alleged

racial discrimination, reasoning that the university's anti-discrimination and anti-harassment policies contained in its student handbook "are not definite enough to be enforced," noting that "[t]hey are appropriate and commendable, perhaps even a critical component of the fabric of the academic community, but they do not create any sort of affirmative, enforceable duty on the part of the University"); ***Bardelli v. Allied Servs. Institute of Rehabilitation Medicine***, *2016 WL 5723724, \*13 (M.D. Pa. 2016)* (finding that the "school's anti-discrimination policy alone is insufficient to constitute an enforceable contract per se between the school [and student]"); ***Hughes v. Missouri Baptist Univ.***, *2021 WL 2042264, \*13 (E.D. Mo. 2021)* (granting dismissal of plaintiff's breach of contract claim for alleged failure to properly respond to allegations of harassment, noting that such allegations are akin to "educational malpractice" claim and plaintiff "effectively requests this Court to supervise [defendant's] internal procedures for monitoring and disciplining its student").

Here, Plaintiffs' Complaint generally alleges that AFS breached its contract with Plaintiffs, citing to various provisions from the Student Handbook for the 2019-2020 (Pl. Compl., at ¶ 272-277); and 2020-2021 (Pl. Compl., at ¶¶ 240-258; 271; 278) school year.  In short, Plaintiffs seek return of two years of tuition and various other costs based upon alleged bullying and parents' disagreement with actions taken in response to the alleged bullying.  These allegations fail for a variety of reasons.

First, while Plaintiffs cite to the 2020-2021 Student Handbook, Student did not attend school during that school year and the handbook could not, as a result, form the basis for a valid contract between the parties.[1]

---

[1] Plaintiffs, at the outset, reference a prior lawsuit filed against AFS.  A review of Plaintiffs' Complaint and the complaint previously filed indicate that Plaintiffs largely copied and pasted the allegations from that lawsuit verbatim. This is further illustrated when reviewing ¶ 279, where it states that "Plaintiffs, in reliance on AFS's promises, paid AFS in full all tuition, costs, and other related fees, as requested by AFS, for Student Doe's 8th and 9th grade years at

Second, the handbook provisions cited by Plaintiffs during the 2019-2020 school year are the exact type of "aspirational approach to complaints involving illegal discrimination, harassment and/or retaliation" that courts have deemed to be enforceable. See e.g., ¶ 272 ("committed to creating a safe and supportive environment for all adults and students"); ¶ 273 (AFS was "dedicated to fostering an environment that promote[d] kindness, acceptance and embrace[d] differences among individuals," and that AFS would "not tolerate any type of harassment by a student," whether on or off-campus). While it is anticipated that Plaintiffs will rely on Judge Pappet's opinion in ***Doe v. Abington Friends School***, *2022 WL 16722322 (E.D. Pa. 2022)* in arguing that these provisions plausibly allege breach of contract, the case is distinguishable in a number of ways. For instance, the mandatory language referenced in the Student Handbook (for the 2020-2021) school year in that case indicated that once a complaint is referred to an adult, AFS will conduct a prompt investigation. There, the plaintiffs alleged that a complaint was allegedly made to a teacher and advisor in May 2021 but was not investigator and that when several other complaints were made in early December 2021, plaintiffs alleged that those complaints were not investigated. Judge Pappert did note that the school retains discretion in determining whether conduct constitutes bullying or harassment. Here, however, Plaintiffs point to incidents occurred during the 2018-2019 school year following the breakup of the relationship between Student Doe and Student Perpetrator but there is no indication that anything was reported to any adult at the time. Rather, Plaintiffs' Complaint states that "Student Doe promptly reported the assault, bullying and harassment…to two of AFS's Upper School 'Class Clerks.'" Pl. Compl., at ¶ 82. Moreover, when Plaintiffs reported a second incident that allegedly occurred on the last day school was in session during 2019, the school met with Plaintiffs prior to the end of 2019 and then met with

---

AFS during the 2019-2020 and 2020-2021 school years." Student Doe did not attending school for the 2020-2021 school year and did not attend school during 8th grade at AFS.

Student Doe in early January 2020 and spoke with Student Perpetrator's family later that month. This can hardly be said to be a lack of prompt investigation by the school.  Rather, it is evident that Plaintiffs simply disagreed with the actions taken by AFS, which is insufficient to form the basis of a plausible breach of contract.  Accordingly, Count I of Plaintiffs' Complaint should be dismissed.

       **E.**        **Plaintiffs' Title IX Claims Fail as a Matter of Law.**

Title IX provides that "no person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." ***S.K. v. North Allegheny Sch. Dist.***, *168 F.Supp.3d 786, 800 (W.D. Pa. 2016) (quoting 20 U.S.C. § 1681(a))*. A school district's "deliberate indifference to sexual harassment of a student by another student can constitute sex discrimination under Title IX" under certain circumstances. ***Id***. (*citing **Davis v. Monroe Cty. Bd. of Educ.**, 526 U.S. 629, 643 (1999)*.  Namely, a plaintiff asserting such a claim must establish that: "(1) the defendant receives federal funds; (2) sexual harassment occurred; (3) the harassment occurred under 'circumstances wherein the recipient exercise[d] substantial control over both the harasser and the context in which the known harassment occur[red],' (4) the funding recipient had 'actual knowledge' of the harassment; (5) the funding recipient was 'deliberately indifferent' to the harassment; and (6) the harassment was 'so severe, pervasive, and objectively offensive that it [could] be said to [have] deprive[d] the victims of access to the educational opportunities or benefits provided by the school.'" ***Id***.; *see also **Williams v. Pennridge School Dist.**, 2018 WL 6413314, \*6 (E.D. Pa. 2018); Doe v. Univ. of Scranton, 2020 WL 5593766, \*5 n.61 (M.D. Pa. 2020)* (applying Title IX to alleged peer-on-peer harassment based upon sexual orientation and gender stereotyping).  Of course, "courts have found that harassment that takes place off of school grounds and/or outside of school hours does not occur under circumstances

where the District exercised substantial control over either the harasser or the context in which the harassment occurred." *Id*. *at \*7*; *see also **M.S. v. Susquehanna Township School Dist.***, *2017 WL 6397827, \*10 (M.D. Pa. 2017)* (finding that harassment that occurred through social media was not within the school district's control).

Moreover, the Supreme Court has determined that whether conduct rises to the level of actionable harassment "depends on a constellation of surrounding circumstances, expectations, and relationships." ***Davis***, *526 U.S. at 651* (internal quotation omitted).  Indeed, in evaluating student-on-student harassment claims, courts "must bear in mind that schools are unlike the adult workplace and that children may regularly interact in a manner that would be unacceptable among adults" and "[d]amages are not available for simple acts of teasing and name-calling among school children…even where these comments target differences in [race or sex]." ***Williams***, *2018 WL 6413314 at \*10* (analyzing cases under severe or pervasive standard)*, citing **Davis**, 526 U.S. at 561*; *see also **Lansberry v. Altoona Area Sch. Dist.***, *318 F. Supp. 3d 739, 760-761 (W.D. Pa. 2018)* (granting motion to dismiss premised on allegations of "unwanted and unwarranted physical contact," "persistent and pervasive ridicule," "threats of violence," and statements that student-victim was "better off dead," and "should commit suicide"); ***Williams v. Pennridge School District***, *782 F. App'x. 120, 127-128 (3d. Cir. 2019)* (affirming dismissal of Title VI harassment claim premised on seven incidents of harassment, finding that "none of the incidents amounted to severe and discriminatory harassment" and further noting that while the "incidents may be strong evidence that her fellow students disliked her,…they are not evidence of harassment");

Here, Plaintiffs allege that "Student Doe was the victim of pervasive abuse, bullying, harassment, assault, battery, false imprisonment regarding physical characteristics, and discrimination on the basis of sexual orientation," which purports to the be the basis of the the Title IX claim in Count II. Pl. Comp., at ¶ 3.  Despite Plaintiffs' contentions, it is clear that Plaintiffs

cannot sustain the burden of demonstrating intentionally harassment or discrimination on the basis of sexual orientation, and cannot sustain their burden of demonstrating that severe, pervasive or objectively offensive harassment occurred. Specifically, Plaintiffs' Complaint specifically alleges the following incidents of alleged harassment:

- On May 24, 2019,[2] Student Perpetrator and the AFS students he recruited "physically surrounded Student Doe" and called "Student Doe's freedom of movement, called Student Doe's a "slut", "fat slut" and a "whore" and slurs targeting Student Doe's physical or other personal characteristics in a derogatory manner and assaulted Student Doe.

- On October 31, 2019, several teenagers rang Plaintiffs' doorbell and asked for Student Doe (who was not home) and Father Doe recognized one of the individuals to be Student Perpetrator.

- "On Friday, December 20, 2019 (the last day of the 2019 academic year) -- on AFS' campus -- Student Perpetrator again sought to falsely imprison, assault, bully and harass Student."[3]

- On January 28, 2020, Student Doe was placed in a class with Student Perpetrator.

None of the incidents referenced appear to be linked to Student Doe's sexual orientation and they are far from the severe or pervasive conduct needed to sustain a Title IX claim. Moreover, while Plaintiffs argue that AFS had "actual knowledge" of the alleged harassment as of May 24, 2019, this appear to be in connection with the alleged report to "Class Clerks," as opposed to anyone in the administration of AFS. Of course, there is no indication that "Class Clerks" are officials with "authority…to institute corrective measures" in order to establish Title VI liability. *See **Blunt v. Lower Merion School Dist.,*** *826 F. Supp. 2d 749, 761-762 (E.D. Pa. 2011)*, *citing **Gebser v. Lago***

---

[2] Plaintiffs' Complaint makes various allegations of purported abuse that happened during Student Doe's relationship with Student Perpetrator, all of which predates May 24, 2019. Plaintiffs' Complaint, however, alleges that "[s]tarting on May 24, 2019 and through the summer of 2020, AFS and its officials had actual knowledge of the fact that Student Perpetrator consistently subjected Student Doe to severe and pervasive sex-based harassment, including physical and verbal assault." Pl. Compl., at ¶ 287.

[3] It is unclear from this allegation what Student Perpetrator did or did not do, as "sought to" is vague and undefined.

***Vista Independent School Dist.***, *524 U.S. 274, 283-87 (1988)* (finding that a school district cannot be held liable for the acts of teachers through *respondeat superior* under Title IX and that plaintiffs must adduce evidence that the district had actual knowledge of the alleged discrimination). Finally, Plaintiffs have failed to plead that AFS engaged in deliberate indifference to support a Title IX claim.  At best, the fact that Student Doe had to see Student Perpetrator in a class after he allegedly sought to engage in harassing behavior simply does not meet the standard for deliberate indifference.  Based on the foregoing, Count II of Plaintiffs' Complaint should be dismissed as a matter of law.

      F.       **Plaintiffs' Rehabilitation Act Claim Fail as a Matter of Law**

      It is well-established that Section 504 of the Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability in the United States…shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance.... ***S.H. ex rel. Durell v. Lower Merion School Dist.***, *729 F.3d 248, 260 (3d. Cir. 2013)*, *quoting 29 U.S.C. § 794(a)*.  To make out a *prima facie* case under the Rehabilitation Act, a plaintiff must show: (1) he or she is handicapped or disabled as defined under the statute; (2) he or she is otherwise qualified to participate in the program at issue; and (3) he or she was precluded from participating in a program or receiving a service or benefit because of his or her disability. ***CG v. Pa. Dep't of Educ.***, *734 F.3d 229, 235 (3d. Cir. 2013)*.  The Third Circuit has held that "claims for compensatory damages under § 504 of the RA…also require a finding of intentional discrimination" and that  "a showing of deliberate indifference may satisfy a claim for compensatory damages under § 504 of the RA [and the ADA]." ***S.H.***, *729 F.3d at 263*.  In order to sustain their burden to demonstrate deliberate indifference under the Rehabilitation Act, a plaintiff "must present evidence that shows both: (1) *knowledge* that a federally protected right is substantially likely to be violated..., and (2)

*failure* to act despite that knowledge." *Id. at 265* (internal citation omitted).  While "[d]eliberate indifference does not require a showing of personal ill will or animosity toward the disabled person," "[i]t does, however, require a deliberate choice, rather than negligence or bureaucratic inaction." *Id. at 265* (internal citation omitted).

Here, Plaintiffs' Complaint alleges that AFS violated Section 504 of the Rehabilitation Act by not evaluating Student Doe, by not convening a Section 504 meeting, by not issuing a Section 504 Plan, and by not providing Student Doe with accommodations and supplement services" and generally allege that "Plaintiffs have suffered and continue to suffer damages including but not limited to humiliation, mental anguish, pain and suffering and loss of educational benefit. Pl. Compl., at ¶¶ 304; 308.  First, there are no allegations that AFS violated any provision of Section 504 with respect to Mother Doe and Father Doe, despite the Complaint specifically alleging that they sustained "pain and suffering" and demanding compensatory and punitive damages under Section 504.  Next, Plaintiffs have failed to plead actual facts demonstrating that Student Doe was discriminated against "solely by reason of her or his disability" and that AFS acted with "deliberate indifference" as required by the Third Circuit.  Indeed, there is no allegation in the Complaint indicating that AFS excluded Student Doe from any program at AFS because of a disability or that Student Doe was denied any benefits because of a disability.  To the contrary, Plaintiffs' Complaint appears to articulate a higher standard—one that is typically seen under the IDEA—in arguing that AFS needed to provide further accommodations while Student Doe attended AFS.  Similarly, Plaintiffs' Complaint makes the conclusory allegation that "AFS knew that a federally protected right was substantially likely to be violated and failed to act despite that knowledge" in an effort to demonstrate deliberate indifference by AFS.  Of course, the law is clear that this court  need not credit either 'bald assertions' or 'legal conclusions' in a complaint when deciding a motion to

dismiss."   There are no allegations demonstrating any deliberate choice by AFS to violate any rights under the Rehabilitation Act.   Accordingly, Count III of Plaintiffs' Complaint should be dismissed.

**G.**   **Plaintiff's Request for Emotional Distress Damages and Punitive Damages Should be Stricken.**

Count II and Count III of Plaintiffs' Complaint request "compensatory, consequential, and punitive damages" against AFS.   Moreover, in Count II, Plaintiff alleges that "Student Doe has suffered emotional distress and psychological trauma for which Student Doe is entitled to be compensated" and Count III alleges that "Plaintiffs have suffered and continue to suffer damages including but not limited to humiliation, mental anguish, pain and suffering and loss of educational benefit. Pl. Compl., at ¶¶ 296; 308.   However, the United States Supreme Court has confirmed that damages for emotional distress are not recoverable under Section 504 and similar statutes like Title IX. *See **Cummings v. Premier Rehab Keller, P.L.L.C.**, 596 U.S. 212, 221-222 (2022)*.   In fact, multiple courts have rejected such claims following the Supreme Court's decision. *See **A.T. v. Oley Valley School Dist.**, 2023 WL 1453143, at \*2  (E.D. Pa. 2023)* (collecting cases and finding that plaintiffs are not entitled to emotional distress damages under Section 504 and Title IX, confirming that there were four statutes, including Title VI and Title IX, that were enacted under the Spending Clause and entitled to the same interpretation for damages); ***Doe v. Moravian College**, 2023 WL 144436, \*9 (E.D. Pa. 2023)* (granting summary judgment in favor of college on  the basis that the damages sought by plaintiff, namely emotional distress damages, were not recoverable under *Cummings* and, therefore, precluded her Title IX claim).   Similarly, it is has been consistently determined that punitive damages are not available under either statute. *See **Barnes v. Gorman**, 536 U.S. 181, 182 (2002)* (noting that the "Court has interpreted Title IX consistently with Title VI" and "[b]ecause punitive damages may not be awarded in private suits brought under Title VI

of the 1964 Civil Rights Act, it follows that they may not be awarded in suits brought under § 202 of the ADA and § 504 of the Rehabilitation Act"); *see also **Doe v. Independent Blue Cross**, 2024 WL 233216, *3 (E.D. Pa. 2024)* (stating that "[n]either punitive damages nor emotional distress damages are recoverable in actions under nondiscrimination provisions of the Spending Clause statutes").  As Plaintiffs are clearly seeking emotional distress damages and punitive damages, those requests should be stricken based upon the precedent set forth by the United States Supreme Court.

### H.      Plaintiffs' Negligent Infliction of Emotional Distress Claims Should be Dismissed as a Matter of Law.

In Pennsylvania, a plaintiff attempting to set forth a claim for negligent infliction of emotional distress ("NIED") must establish: (1) "the plaintiff suffered a physical impact"; (2) "the plaintiff was in a zone of danger, thereby reasonably experiencing a fear of impending physical injury"; (3) "the plaintiff observed a tortious injury to a close relative"; or (4) "the defendant had a contractual or fiduciary duty towards the plaintiff." ***MDB v. Punxsutawney Christian School***, *386 F. Supp. 3d 565, 592 (W.D. Pa. 2018)* (dismissing NIED claim for failure to discipline student following alleged sexual assault, concluding that "absent special circumstances not present here, the Pennsylvania courts would not extend liability for the NIED tort to a case involving a relationship between a school and its student"); *see also **Doe v. Hill School**, 2023 WL 5339610, *8 (E.D. Pa. 2023)* (stating that "Plaintiff has failed to point to any Pennsylvania or Third Circuit authority suggesting that a private school has a special relationship with a student that could give rise to NIED liability, and to my knowledge no such authority exists.").  Here, each of the Plaintiffs appear to be alleging a claim for negligent infliction of emotional distress.  However, the claims fail for multiple reasons.

First, the claims would be barred by the "gist of the action doctrine."  Specifically, in Pennsylvania, plaintiffs "are precluded from recasting ordinary breach of contract claims into tort claims" pursuant to the "gist of the action" doctrine. *See **Etoll, Inc. v. Elias/Savion Adver., Inc.**, 811 A.2d 10, 14 (Pa. Super. Ct. 2002)*; *see also **Bruno v. Bozzuto's, Inc.**, 850 F. Supp. 2d 462, 468 (M.D. Pa. 2012)* (holding that the gist of the action doctrine precluded plaintiffs' tort claims where the allegations for the alleged fraudulent action were also within the breach of contract claim and further reasoning that "[p]laintiffs cannot have it both ways on the same set of facts"); ***MDB**, 386 F. Supp. 3d 565, 592 (W.D. Pa. 2018) (*rejecting plaintiff's claims premised on an alleged duty to "care for [plaintiff's emotional well being" and "ensure his safety" from the alleged failure to discipline [a student], finding that the averment sounds in contract, not tort").  Indeed, Plaintiffs generally assert that the claims against the individual defendants are premised on a contractual relationship. *See* Pl. Comp., at ¶ 311 ("Individual Defendants had a pre-existing duty of care, either through contract, fiduciary duty, and/or special relationship, to ensure Student Doe, as an enrolled student at AFS, was safe from AFS student and/or while on AFS premises").  This admission confirms that the gist of the action doctrine applies and, like MDB, requires dismissal of Count IV.

Second, as noted above, while Plaintiffs appear to assert that there was a "fiduciary" or "special relationship" that created an NIED duty, this argument has been consistently rejected by courts throughout Pennsylvania.  Moreover, there is no attempt to articulate facts as to how these individual defendants have a "special relationship" or "fiduciary" duty to the parents of a student who attends a private school.  Quite simply, there is no basis for such a claim.

Third, while it is argued that Student Doe was in a "zone of danger" to support such a claim, there is no indication that any of the individual defendants were aware of any issues between

20

Student Doe and Student Doe's ex-boyfriend at the time of the alleged assault. Notably, Plaintiffs concede that nothing was mentioned to any of the individual defendants in May 2019 when it allegedly occurred.

_Finally_, Plaintiffs' NIED claim fails because they make no effort whatsoever to outline how it is that each of the individual defendants were somehow negligent or caused emotional distress. To the contrary, they simply lump all individual defendants together with the hope that some claim may survive. As Plaintiffs' allegations fall well short of the pleading requirements set forth by the Supreme Court in **_Twombly_** and **_Iqbal_**, Counts IV of Plaintiffs' Complaint should be dismissed.

## IV. CONCLUSION

Based upon the foregoing, Defendants respectfully request that their Motion to Dismiss Plaintiffs' Complaint be granted and that an Order be entered dismissing all claims against Defendants, with prejudice.

Respectfully submitted,

**MARSHALL DENNEHEY, P.C.**

BY: _____

LEE C. DURIVAGE
Identification Number: 205928
2000 Market Street, Suite 2300
Philadelphia, PA 19103
Phone: (215) 575-2584
Fax: (215) 575-0856

Attorney for Defendants

Dated: April 10, 2024

21

**<u>CERTIFICATE OF SERVICE</u>**

I, Lee C. Durivage, Esquire, do hereby certify that a true and correct copy of Defendants'

Motion to Dismiss Plaintiffs' Complaint and Memorandum of Law in Support of the Motion to

Dismiss was served upon all counsel by electronic service through the Court's ECF system at the

following address:

Jerry R. DeSiderato, Esquire
**Dilworth Paxson LLP**
1500 Market Street, Suite 3500E
Philadelphia, PA 19102
Fort Washington, PA 19034

MARSHALL DENNEHEY, P.C.

BY:_____

LEE C. DURIVAGE
Attorney for Defendants

Dated: April 10, 2024