IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| STUDENT DOE et al., | : | |
| | : | |
| Plaintiffs, | : | |
| | : | Civil Action |
| v. | : | |
| | : | No. 24-1127 |
| ABINGTON FRIENDS SCHOOL et al., | : | |
| | : | |
| Defendants. | : | |

**MEMORANDUM**

J. Younge                                                                                       August 22, 2024

**I.      INTRODUCTION**

Presently before the Court is Defendant Abington Friend School's (hereinafter "AFS") Motion to Dismiss Plaintiff's Amended Complaint for failure to state a claim upon which relief can be granted under Fed. R. Civ. P. 12(b)(6). (Motion to Dismiss, ECF No. 16.) The Court finds Plaintiff to have sufficiently pled claims to permit them to proceed to discovery. Upon considering all papers submitted in support of this Motion to Dismiss and in opposition thereto, and for the reasons set forth in this Memorandum, it is hereby **ORDERED** that said motion is **GRANTED** in part and **DENIED** in part.

**II.     FACTUAL BACKGROUND[1]**

This case arises out of allegations that Plaintiff, Student Doe, was subjected to bullying and harassment during her time at Defendant School, AFS, and the school's alleged failure to

---

[1] At this time, the court is only restating the facts as alleged, without making any judgment on the truthfulness or veracity of the factual assertions contained within the Amended complaint.

adequately respond to these issues. Student Doe attended AFS starting from September 2018 until September 2020, when Student Doe's parents, Plaintiffs Mother Doe and Father Doe withdrew her from AFS. *See* Amended Complaint, ECF No. 14.

In 2018, Mother Doe and Father Doe entered into an enrollment agreement with AFS, a private school in Pennsylvania, for Student Doe to begin her freshman year of high school. (*Id.* at ¶ 45.) This agreement, executed by Mother Doe and Father Doe on behalf of Student Doe, required a tuition fee of $34,000 for the 2018-2019 academic year and incorporated terms from the AFS handbook and other school policies. (*Id.*) Upon commencing her education at AFS, Student Doe commuted from her home in Northwest Philadelphia using the school's Northwestern bus. (*Id.* at ¶ 48.) During these commutes, she met another student who she soon developed a romantic relationship with. (*Id.* at ¶ 51.) This student is referred to in Plaintiffs' complaint as "Student Perpetrator." *Id.*

Sometime between the commencement of their romantic involvement in Fall 2018 and May 2019, Student Doe asserts that she attempted to end her relationship with Student Perpetrator on several occasions but was met with threats that he would "rape" Student Doe's sister. (*Id.* at ¶¶ 45-62.) In light of these threats, Student Doe claims she was coerced into continuing the pretense of an ongoing relationship with Student Perpetrator until May 2019. (*Id.* at ¶ 63.) Following the termination of their relationship in May 2019 and extending into the summer of 2020, Student Doe alleges Student Perpetrator assaulted, battered, psychologically and physically abused, taunted, restrained, falsely imprisoned, bullied, and harassed Student Doe. (*Id.* at ¶ 53.) Some of the alleged incidents took place on AFS' campus, with Student Perpetrator often enlisting other AFS Students to participate in the campaign. (*Id.* at ¶ 54.) In one specific instance detailed in Plaintiffs' amended complaint, Student Perpetrator had his

friends lure Student Doe into a classroom at AFS, where they confronted and called Student Doe derogatory names like "fat" and "slut," targeting Student Doe's physical and sexual characteristics. (*Id*. at ¶ 65.) On May 24, 2019, Student Doe alleged that Student Perpetrator, along with other AFS students he recruited, physically surrounded her on a small field at the AFS campus, obstructed her movement, subjected her to verbal abuse and physically assaulted her. *(Id.)* Verbal abuse included the aforementioned derogatory names as well as repeatedly asking her why she would not date Student Perpetrator. (*Id*. at ¶ 86.) After the May 24th incident, Student Doe reported the bullying and harassment to the Class Clerks, members of the student-faculty Discipline Advisory Council. Plaintiffs allege that despite the protocols outlined in the AFS Handbook, AFS took no action to investigate the complaint about the May 24th incident before the commencement of the 2019-2020 school year. (*Id*. at ¶ 94.)

In August 2019, prior to Student Doe beginning her sophomore year at AFS, Mother Doe and Father Doe emailed the Head of School at AFS, Defendant Mr. Richard Nourie ("Nourie"), to request a meeting concerning the incident. (*Id*. at ¶ 92.) On September 10, 2019, Father Doe and Mother Doe met with Nourie to discuss the multiple bullying incidents from May 24, 2019, and the alleged threats against Student Doe's younger sister that had occurred earlier in the year. (*Id*. at ¶ 96.) They also informed Nourie that these incidents had been reported to two Class Clerks. (*Id*. at ¶ 95.) Plaintiffs allege that Nourie assured Mother Doe and Father Doe that the proper authority at AFS would immediately be notified, that Student Perpetrator would be monitored to prevent further incidents from occurring and they would collectively attempt to ensure Student Doe's safety. (*Id.*)

Despite these assurances, Plaintiffs assert the bullying persisted for many months. (*Id.* at ¶ 103.) On December 20, 2019, Student Perpetrator allegedly falsely imprisoned, assaulted,

bullied, and harassed Student Doe once again. (*Id.* at ¶ 113.) Specifically, Student Perpetrator, with his friends, continued to call Student Doe the aforementioned derogatory names while preventing her from exiting the classroom they were in at the time. (*Id.*) Shortly thereafter, Mother Doe and Father Doe contacted Nourie once again, providing an update as to the harassment that Student Doe endured. (*Id.* at ¶ 115.) Nourie reassured Mother Doe and Father Doe that the appropriate authorities would be looped in, and the situation would be addressed. (Id. at ¶ 118.) A week after this interaction, then-Upper School Director, Defendant Dom Gerard ("Gerard") organized a meeting with Student Doe, Upper School Dean of Students, Defendant LaToya Miller ("Miller"), and School Counselor, Defendant Kevin Ryan ("Ryan"). (*Id.* at ¶ 124-125.) On January 6, 2020, Ryan, Miller, and Gerard sat down with Student Doe wherein Student Doe recounted all the bullying and harassment that she had allegedly endured by Student Perpetrator. (*Id.* at ¶ 132-133.) Two days later, on January 8, 2020 Mother Doe and Father Doe met with Gerard, Miller, and Ryan, wherein AFS collectively expressed concern about conducting an investigation of Student Perpetrator during winter exam season, and assured Mother Doe and Father Doe that a full investigation would be conducted immediately after winter exams. (*Id.* at ¶ 144-147.) At those meetings, AFS allegedly advised Student Doe to keep the bullying and harassment confidential. (*Id.* ¶ 148, 152.) Plaintiffs further claim that after winter exam season ended, AFS continued to postpone its interview of Student Perpetrator and its meeting with Student Perpetrator's parents. (*Id.* at ¶ 157.)

Mother Doe and Father Doe expressed serious concerns to AFS's staff regarding the deteriorating mental and physical health of Student Doe. (*Id.* at ¶¶ 142, 150, 154-55.) They informed AFS that she had developed an eating disorder, began a course of antidepressants, suffered frequent panic attacks and severe anxiety. (*Id*.) Further, Mother and Father Doe

emphasized the need to keep Student Doe and Student Perpetrator in separate classes for the 2020-2021 school year. (*Id*.) Despite their talks with AFS's staff, Student Doe was visibly distressed to learn that she had been assigned to the same class as Student Perpetrator. (*Id.* at ¶¶ 161-170.) Upon seeing Student Perpetrator, Student Doe allegedly declined to enter the classroom, prompting Miller to order her to "just take a seat." (*Id.* at ¶ 171.) Student Doe retreated to the bathroom where she suffered a panic attack. (*Id.* at ¶ 178.) Following this incident, Mother Doe came to pick her up from AFS. (*Id.* at ¶ 179.)

Student Doe was then contacted by other AFS students asking why she left school abruptly and why her parents were speaking to Gerard and Ryan. (*Id.* at ¶ 188.) Concerned that her classmates might suspect her involvement in a disciplinary issue related to a Schedule I narcotics incident with other AFS students earlier in the year, Student Doe made three posts on social media to explain to her peers what had been occurring at AFS. (*Id.* at ¶¶ 186-188.) These posts led to accusations from AFS that Student Doe's social media postings would be considered harassment of Student Perpetrator. (*Id.* at ¶¶ 223-224.) AFS labeled Student Doe's posts as "online bullying," and threatened Student Doe with summary expulsion. In response, Mother Doe and Father Doe withdrew Student Doe from AFS prior to the commencement of her 11th grade year. (*Id.* at ¶ 271.)

As a result of the purported peer harassment and abuse experienced by Student Doe while attending AFS for the 2018-2019 and 2019-2020 school years, Plaintiffs brought this action on March 14, 2024, against AFS, Richard Nourie, Dominique Gerard, LaToya Miller, and Kevin Ryan (collectively, "Individual Defendants"). Against AFS, Plaintiffs allege: (1) breach of contract, (2) discrimination in violation of Title IX, 20 U.S.C. § 1681 et seq, (3) discrimination in violation of § 504 of the Rehabilitation Act of 1973, as amended, 29 U.S.C. § 794, and (4) for

violations of the Pennsylvania Unfair Trade Practices/Consumer Protection Law, 73 P.S. § 201-1 *et seq.* Against the Individual Defendants, plaintiffs allege Negligent Infliction of Emotional Distress. AFS and the Individual Defendants then filed the Motion to Dismiss Plaintiffs Amended Complaint that is now before this court. *See* Motion to Dismiss Plaintiffs' Amended Complaint, ECF No. 16.

### III.     LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) permits a party to raise the defense that the complaint in question "fail[s] to state a claim upon which relief can be granted," known as a motion to dismiss. The standard for a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) is examined in detail in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).  After *Iqbal*, it is clear that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to defeat a Rule 12(b)(6) motion to dismiss.  *Id.* at 678; *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  "To survive dismissal, 'a complaint must contain sufficient factual matter, accepted as true, to state a claim [for] relief that is plausible on its face.'" *Tatis v. Allied Interstate*, LLC, 882 F.3d 422, 426 (3d Cir. 2018) (quoting *Iqbal*, 556 U.S. at 678).  Facial plausibility is "more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Iqbal*, 556 U.S. at 678).  Instead, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Iqbal*, 556 U.S. at 678).  Thus, this Court must examine Plaintiff's claims to determine whether it can infer that Defendant is liable for the alleged misconduct.

## IV. DISCUSSION

### A. Plaintiffs' Breach of Contract Claims are not Time barred.

Defendants move to dismiss Plaintiff's breach of contract claims, arguing that they are barred by the four-year statute of limitations for such claims. (Motion to Dismiss Plaintiffs' Amended Complaint, ECF No. 16). Defendants contend that some of Plaintiff's claims regarding AFS's delayed response to the harassment and bullying experienced by Student Doe are inherently time-barred. Plaintiffs, however, make the argument that AFS had a continuing obligation to investigate the misconduct occurring on their campus for as long as Student Doe continued to be enrolled as a student. (Amended Complaint, ECF No. 14.) We agree with Plaintiffs.

Under Pennsylvania law, the statute of limitations for a breach of contract claim is four years and accrues from when the plaintiff should have known about the breach. *Palmore v. Clarion Univ. of Pennsylvania*, 2023 WL 5607557, *4 (3d. Cir. 2023). Plaintiffs acknowledge that any breach that occurred before March 14, 2020, would be time-barred. However, any breach which occurred after this date is within the statute of limitations, given that this lawsuit was initiated on March 14, 2024. Student Doe was still enrolled at AFS until approximately September 2020. Therefore, the breaches of contract alleged in Plaintiffs' complaint, which took place between March 14, 2020, and September 2020, are not time-barred.

### B. For The Purposes of This Motion, The Court Will Consider AFS to Have Been a Recipient of Federal Financial Assistance

Defendants now move to dismiss Plaintiff's Title IX and Section 504 claims on the grounds that the alleged incidents related to these claims occurred before receipt of Paycheck Protection Program ("PPP") funds from the Coronavirus Aid, Relief, and Economic Security

Act. At this procedural posture, we need not examine Defendants' argument in depth; rather, we must ascertain whether these funds constitute financial assistance for the purpose of surviving a motion to dismiss. Due to the recency of the PPP funds, courts across different circuits hold varying opinions on whether these funds constitute federal financial assistance in cases similar to the one at hand. *See E.H. by and through Herrera v. Valley Christian Acad.*, No. 21-07574, 2022 WL 2953681 at *6 & n.6 (C.D. Cal. July 25, 2022) (finding that PPP funds do constitute financial assistance under anti-discrimination statutes). *But see Lucius v. Fort Taco, LLC*, No. 21-22397, 2022 WL 335491 at *6 (S.D. Fla. Jan. 5, 2022) (finding that PPP funds do not constitute federal financial assistance within the meaning of the Rehabilitation Act). However, the court finds the reasoning of Judge Pappert in a case with largely similar allegations persuasive. For this stage of litigation, in *Doe v. Abington Friends School*, Judge Pappert concluded that such funds are adequate to establish financial assistance, and sufficient to withstand a motion to dismiss. *Doe v. Abington Friends Sch.,* No. CV 22-0014, 2022 U.S. Dist. LEXIS 201121, 2022 WL 16722322, at *21 (E.D. Pa. Nov. 4, 2022).

    C.   *Plaintiffs Have Pled Sufficient Facts in Support of Their Breach of Contract Claim to Allow Them to Proceed to Discovery.*

Plaintiffs bring a claim for breach of contract, contending that AFS made binding commitments via its Student Handbook and enrollment agreement. They assert that AFS neglected to adhere to the policies and procedures outlined in the AFS handbook, specifically regarding Student Doe's safety and AFS's response to complaints and reports of bullying and harassment. Defendant now moves to dismiss this claim, asserting that the statements in the handbook are merely "aspirational" and that Plaintiffs have not pled sufficient facts to form the basis of a plausible breach of contract. The Court finds Plaintiffs to have sufficiently pled facts to establish a plausible breach of contract claim to proceed to discovery.

It is well-established that in order to plead a cause of action for breach of contract, three elements are necessary: "(1) the existence of a contract, (2) a breach of the contract, and (3) resultant damages." *Meyer, Darragh, Buclker, Bebenek, & Eck, P.L.L.C. v. Law Firm of Malone Middleman, P.C.*, 137 A.3d 1247, 1258 (Pa. 2016). Additionally, to succeed in a breach of contract claim at this stage, Plaintiff must be able to identify specific obligations in the handbook which were not fulfilled. *Miller v. Thomas Jefferson Univ. Hosp.*, 908 F. Supp. 2d 639, 655 (E.D. Pa. 2012) (citing *Cavaliere v. Duff's Bus. Inst.*, 605 A.2d 397, 404 (Pa. Super. Ct. 1992)). Merely "aspirational" language is insufficient to constitute an enforceable promise. *See Figueroa v. Point Park Univ.*, 553 F. Supp. 3d. 259, 272 n.23 (W.D. Pa. 2021). The Court evaluates each of the three elements, and whether Plaintiffs have identified specific provisions to determine if Plaintiffs have adequately stated facts to support this claim.

First, Plaintiffs have sufficiently alleged facts demonstrating the existence of a contract in this case. The Superior Court of Pennsylvania, in its *Swartley* decision, held that the relationship between a student and a private institution is contractual in nature. *Swartley v. Hoffner,* 734 A.2d 915, 922 (Pa. Super. Ct. 1999). However, it is not the existence of a contract that is in question here, but rather the parameters of that contract. The court finds that AFS' Upper School Handbook is incorporated by reference in its enrollment contract. The Third Circuit has previously held that "[t]he contract between a private institution and a student is comprised of the written guidelines, policies, and procedures as contained in the written materials distributed to the student over the course of their enrollment in the institution." *Utah v. Strayer Univ.*, 667 Fed. Appx. 370, 371 (3d Cir. 2016) (quoting *Swartley v. Hoffner,* 734 A.2d at 919). Specifically, in the current case, the enrollment agreement that AFS required Plaintiffs to sign stipulates, "[w]e agree to accept the rules and regulations of Abington Friends School as stated in its current handbook (available online)

and other publications and notices." Given that the case is in the early stages of pleadings, the Court finds it reasonable to interpret the student handbook as defining the terms of the enrollment agreement.

Plaintiffs have also sufficiently pled facts to establish that if the Upper Student Family Handbook did in fact serve as defining the terms of the contract, said contract was breached. In Plaintiffs' Amended Complaint, Plaintiffs reference several explicit promises and terms from the handbooks of 2018-2019 and 2019-2020 school year, which were in effect, purportedly violated by AFS throughout Student Doe's attendance. Specifically, AFS's "non-harassment, non-discrimination, non-retaliation and accommodation policy" assured prompt investigation of any reported harassment, which according to Plaintiffs' amended complaint, continued to be postponed. (*See* 2019-2020 AFS Upper School Family Handbook, Amended Complaint, Exhibit B, ECF No. 14-2.) At this stage, the Court finds these policies were beyond "merely aspirational" and instead constituted actual promises and obligations which were not met by AFS.

Lastly, Plaintiffs have adequately alleged facts to establish sufficiently that damages were incurred. In addition to the tuition money Mother Doe and Father Doe paid, Plaintiffs allege that Student Doe suffered from an eating disorder, began a course of antidepressants, was suffering frequent panic attacks and severe anxiety as a result of AFS's failure to respond promptly to reported bullying and harassment. (Amended Complaint ¶ 92, ECF No. 14.)

At this stage in the litigation, the court finds that the facts alleged in the Amended Complaint permit Plaintiffs to pursue discovery and present evidence that may further substantiate their breach of contract claim. As such, Defendants' motion to dismiss Plaintiffs' breach of contract claim is denied.

*D. Plaintiffs have pled sufficient facts in support of their Title IX Claims*

Defendants seek to dismiss Plaintiffs' Title IX claims on the grounds that they have failed to show any intentional harassment or discrimination on the basis of sexual orientation, and cannot sustain their burden of demonstrating that severe, pervasive, objectively offensive harassment occurred. Conversely, Plaintiffs cite several instances that they argue meet the criteria for a Title IX claim, sufficient to withstand this motion to dismiss. The court finds that Plaintiffs have presented enough facts to advance to the discovery stage regarding their Title IX claim.

Title IX provides that "no person in the United States shall, on the basis of sex, be excluded in participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." To be successful in asserting a Title IX claim, Plaintiffs must establish that: "(1) the funding recipient receives federal funds; (2) sexual harassment occurred; (3) the harassment occurred under 'circumstances wherein the recipient exercise[d] substantial control over both the harasser and the context in which the known harassment occur[ed];' (4) the funding recipient had 'actual knowledge' of the harassment; (5) the funding recipient was 'deliberately indifferent' to the harassment; and (6) the harassment was 'so severe, pervasive, and objectively offensive that it [could] be said to [have] deprive[d] the victim of access to the educational opportunities or benefits provided by the school.' *Id*.; *see also Williams v. Pennridge Sch. Dist.*, 2018 WL 6413314, * 6 (E.D. Pa. 2018); *Doe v. Univ. of Scranton*, 2020 WL 5993766, * 5 n.61 (M.D. PA. 2017) (applying Title IX to alleged peer-on-peer harassment based upon sexual orientation and gender stereotyping).

Plaintiffs have adequately alleged facts to support their claims at this stage of the proceedings as to the occurrence of sexual harassment. In its amended complaint, Plaintiffs

allege that over a multi-year period, Student Doe was victim of pervasive and ongoing harassment linked to her sex/and or sexual orientation. Namely, Plaintiffs allege that Student Doe was derogatorily called "slut," among other terms closely related to her personal characteristics. (Amended Complaint, ¶ 86, ECF No. 16.) Moreover, Plaintiffs have sufficiently alleged that AFS had "actual knowledge" of the harassment and was "deliberately indifferent" within the meaning of the statute. Student Doe, Mother Doe and Father Doe repeatedly spoke with persons of leadership at AFS, and according to the allegations in the complaint, AFS failed to take action such that Student Doe would cease to be subjected to this sexual harassment. As a consequence of AFS's actual knowledge and deliberate indifference, Student Doe stopped attending school for a period of time wherein she was deprived of educational opportunities. (Amended Complaint, ¶ 189.) As such, the Court finds that Plaintiffs' claims may plausibly fall within the zone of interests under Title IX.

  E.  *Plaintiffs have Raised Facts That Would Support a Retaliation Claim under Title IX.*

  Defendants move to dismiss Plaintiffs' Retaliation claim under Title IX on the grounds that Plaintiffs fail to raise facts to demonstrate retaliation. To bring a retaliation claim, Plaintiffs must plausibly assert that: (1) they engaged in protected activity; (2) they suffered an adverse action; and (3) there was a causal connection between the two. *Doe v. Manor College*, 587 F.Supp.3d 249, 251 (E.D.PA. 2022). At this stage, Plaintiffs have pled facts sufficient to withstand motion to dismiss as it pertains to the retaliation claims.

  Plaintiffs cite to proper authority that classifies reporting discrimination as protected activity under the relevant statute. In *Jackson v. Birmingham Bd. of Educ.,* the Supreme Court determined that "reporting incidents of discrimination is integral to Title IX enforcement . . ." *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 173, 125 S. Ct. 1497, 161 L. Ed. 2d 361. It is

uncontested that Student Doe, Mother Doe and Father Doe reported the sexual harassment multiple times to AFS—these reports came in the forms of both direct reporting and indirect reporting through social media. The Court finds this sufficient to constitute protected activity within the meaning of the statute. The second prong is also satisfied here. Plaintiffs suffered a materially adverse action within the meaning of the statute. This is generally defined as an action that would have "dissuaded a reasonable [person in the plaintiff's position] from making or supporting a charge of discrimination." *Ploeger v. Trustees of Univ. of Pa.*, 653 F.Supp. 188, 196 (E.D.Pa. 2023) (citing *Johnston v. Univ. of Pittsburgh of the Commonwealth Sys. Of Higher Educ.*, 97 F.Supp. 3d 657, 682 (W.D.Pa. 2015)). Here, Plaintiff's claim that AFS's threats of disciplinary actions against Student Doe are plausibly retaliatory because Student Doe's conduct was not in violation of major community standards and the threats she received from AFS were not a typical consequence for similar behavior. Thus, Plaintiffs have raised facts to support that AFS may have plausibly retaliated against her for reporting the harassment she received, and for Mother Doe and Father Doe's support of Student Doe. Plaintiffs have established a clear causal link between engagement in protected activity and the alleged adverse action. As such, Defendant's motion is denied with respect to Plaintiff's retaliation claim.

  F. *Plaintiffs Have sufficiently Pled Facts That Would Support of a Prima Facia Case for § 504 of the Rehabilitation Act.*

 Defendants now move to dismiss Plaintiffs' claim under § 504 of the Rehabilitation Act arguing that Plaintiffs have failed to plead actual facts demonstrating that Student Doe was discriminated against "solely by reason of her or his disability." However, the Court has determined that Plaintiffs have put forth claims that plausibly indicate Student Doe was discriminated against because of her disability, permitting them to move forward to the discovery

phase. As such, the Court denies Defendants motion to dismiss as it pertains to Plaintiffs' § 504 of the Rehabilitation Act claims.

Section 504 of the Rehabilitation Act provides: " [n]o otherwise qualified individual with a disability in the United States...shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . " *S.H. ex rel. Durell v. Lower Merion School Dist.*, 729 F.3d 248, 260 (3d. Cir. 2013), *quoting 29 U.S.C. § 794(a)*. To make out a prima facie case under the Rehabilitation Act, a plaintiff must show: (1) he or she is handicapped or disabled as defined under the statute; (2) he or she is otherwise qualified to participate in the program at issue; and (3) he or she was precluded from participating in a program or receiving a service or benefit because of his or her disability. *Strathie v. Department of Transp.*, 716 F.2d 227, 230 (3d Cir.1983). Additionally, this Circuit has held that Plaintiff seeking compensation under § 504 of the Rehabilitation Act must demonstrate that the Defendants "know or should be reasonably expected to know of his disability." *Ridgewood Bd. of Educ. v. N.E. ex rel. M.E.*, 172 F.3d 238, 253 (3d Cir. 1999).

In identifying whether Student Doe is "disabled" under the statute, the Court finds Judge Pappert's reasoning in *Doe v. Abington Friends* persuasive. In *Doe v. Abington Friends*, the Plaintiff in that case was found to have "…set out a plausible section 504 claim." *Doe v. Abington Friends,* 2022 WL 16722322 at *20. Judge Pappert identified anxiety as being a disability that "substantially limit[s] the major life activity of learning under the Rehabilitation Act." *Id.* In the case at bar, in addition to alleging that Student Doe suffers from anxiety, Plaintiffs claim that Student Doe suffers from Depression and Obsessive-Compulsive Disorder ("OCD") with frequent panics attacks and disordered eating. Student Doe is otherwise qualified

to participate in all school programs and activities. Thus, for the purposes of this motion, the Court considers Student Doe disabled under the relevant statute.

With respect to the third prong, Plaintiffs have sufficiently pled facts to withstand motion to dismiss at this stage. Specifically, Plaintiffs contend that with knowledge of Student Doe's disability, AFS failed to (1) evaluate Student Doe, (2) convene a section 504 meeting, (3) issue a Section 504 plan, (4) provide Student Doe with accommodations and supplement services. Plaintiffs point to specific instances where Mother Doe and Father Doe explicitly requested that Student Doe be separated from Student Perpetrator due to her anxiety, requests that AFS disregarded. The combination of these alleged failures on the part of AFS leads the Court to consider that intentional discrimination due to Student Doe's disability may have occurred. Thus, Plaintiff has adequately alleged facts that support the elements of a prima facie case.

G. *Plaintiffs Have Not Raised Facts That Would Support an Unfair Trade & Consumer Protection Law Claim.*

Defendants move to dismiss Plaintiffs claims that AFS violated the Unfair Trade Practices and Consumer Protection Law ("UTPCPL") by engaging in unfair competition or deceptive acts or practices. Defendants claim that Student Doe is not a purchaser entitled to protection under the UTPCPL. The court agrees.

"To state a claim under the UTPCPL, a plaintiff must show: (1) deceptive conduct; (2) an ascertainable loss; (3) justifiable reliance on the defendant's wrongful conduct or misrepresentations; and (4) that such reliance caused an injury." *Harris v. Saint Joseph's University*, 2014 WL 1910242, *7 (E.D.Pa. 2014) (internal citations omitted).

Plaintiffs have failed to cite to a single case where students have been granted protection under the UTPCPL. Instead, they have drawn on cases involving significantly different contexts, such as homebuilder-contractor and insurer-insurance relationships. Conversely,

Defendants have provided several cases where District Courts, including this very district, have dismissed the idea that a student can file a claim against a school under the UTPCPL. *Dobson v. Milton Hershey Sch.*, 356 F. Supp. 3d 428, 437 (M.D. Pa. 2018). As such, Defendants motion to dismiss Plaintiffs' UTPCPL is granted.

### H.  *Plaintiffs NIED Claim is Barred by Pennsylvania's Gist of the Action Doctrine.*

Defendant's Motion to Dismiss as to Plaintiffs' Negligent Infliction of Emotional Distress Claims must be granted as these claims are precluded by Pennsylvania's Gist of the Action Doctrine, which "prevents plaintiffs from recasting ordinary breach of contract claims as tort claims." *MDB v. Punxsutawney Christian Sch.*, 386 F. Supp. 3d 565, 591–92 (W.D. Pa. 2019). This doctrine draws an important distinction between obligations set by contractual terms and those imposed by the "larger policies imbodied in the law of torts." *Id*. at 591 (quoting *Bohler-Uddeholm Am., Inc. v. Ellwood Grp.*, Inc., 247 F.3d 79, 104 (3d Cir. 2001)). As the Pennsylvania Supreme Court has consistently recognized, the relationship between a student and a private institution is fundamentally contractual. *Swartley v. Hoffner,* 734 A.2d 915, 922 (Pa. Super. Ct. 1999). Consequently, if AFS owes any duty to Student Doe, it is strictly derived from their contractual relationship and cannot form the basis of a tort claim.

Irrespective of the Gist of the Action Doctrine, Plaintiffs' claims cannot withstand dismissal or be amended to continue. There are four scenarios under which a Plaintiff may successfully bring an NIED claim in Pennsylvania: (1) "Plaintiff suffered a physical impact"; (2) "the Plaintiff was in a 'zone of danger', thereby reasonably experiencing a fear of impending physical injury"; (3) "the Plaintiff observed a tortious injury to a close relative"; or (4) "the defendant had a contractual or fiduciary duty towards Plaintiff." *MDB*, 38 F.Supp.3d. at 592. Plaintiffs attempt to bring this claim under scenarios (2) and (4). Plaintiffs allege that Student

Doe was placed in a 'zone of danger' on AFS's premises, which caused Student Doe to experience a fear of impending physical injury. (Amended Complaint, ¶ 105, ECF No. 14.) Although the allegations in the complaint suggest that AFS did in fact place Student Doe in a zone of danger and that Student Doe was in reasonable fear of impending physical injury, this claim is insufficient to survive dismissal in light of the Gist of the Action doctrine. Additionally, Plaintiffs' claims fail under the fourth factual scenario—the 'fiduciary duty' scenario. In *Toney v. Chester Cnty*. Hosp., 961 A.2d 192, 198 (Pa. Super. Ct. 2008), the Pennsylvania Supreme Court determined that the relationship between obstetricians and an expectant mother established a duty sufficient to support a claim for NIED. However, "…courts have largely declined to expand this 'special relationship' outside the 'narrow grounds' of the medical context." *Doe v. Hill School*, NO. CV 23-1210, 2023 WL 5339610, at 8. (E.D. Pa. Aug.18, 2023) (quoting *Henry v. Sch. Dist. of Phila*., No. CV 19-1115, 2020 WL 6287492, at *8 (E.D. Pa. Oct. 27, 2020)). This Court is persuaded by the opinions of other courts within this Circuit and consequently finds that no fiduciary duty exists here.

## V.   CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss is **DENIED** in Part and **GRANTED** in Part.

An appropriate Order follows.

**IT IS SO ORDERED.**

BY THE COURT:

/s/ John Milton Younge
**Judge John Milton Younge**